

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
AUG -4 2015
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* UNIVERSITY LOFT COMPANY<br>     Plaintiff,<br>v.<br><br><br>HOME FURNISHINGS RESOURCE<br>GROUP, INC. d/b/a FUNCTION FIRST<br>FURNTIURE, A DIVISION OF CURT<br>CHRISTIAN DESIGNS, and MARTIN<br>HOME FURNISHINGS<br><br>     Defendants. | § § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br><br>**FILED IN CAMERA<br>AND UNDER SEAL**<br>Pursuant To 31 USC §3730(b)<br><br>SA15CV0646 OG |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**(JURY TRIAL DEMANDED)**

The United States of America *ex rel.* J Squared, Inc. d/b/a University Loft Company ("Relator"), files this Complaint against Defendant Home Furnishings Resource Group, Inc. d/b/a Function First Furniture, a Division of Curt Christian Designs ("F3"), and Martin Home Furnishings a/k/a Martin Furniture.  In support thereof, Relator respectfully would show the Court as follows:

**I.**
**PARTIES**

1.     Relator is an Indiana Corporation having its principal place of business in Greenfield, Indiana.

2.     Defendant F3 is believed to be a Tennessee company with its principal place of business in Nashville, TN.

3. Defendant Martin Home Furnishings aka Martin Furniture ("Martin") is believed to be a California company with its principal place of business in San Diego, California.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. §§ 1331 (Federal question), 1345 (United States as plaintiff) and 31 U.S.C. § 3732(a) (False Claims Act). The Court also has supplemental jurisdiction over University Loft's state law claims for unfair competition against F3.

4. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. §3732(a) because the Defendants can be found and/or transact business in this District. Title 31, United States Code, Section 3732(a) further provides for nationwide service of process.

5. Upon information and belief, this Complaint is not based on the facts underlying any pending related *qui tam* action, within the meaning of the False Claims Act's first-to-file rule, 31 U.S.C. § 3730(b)(5).

6. This action is not precluded by any provisions of the False Claims Act's jurisdiction bar, 31 U.S.C. § 3730(e) *et seq.*

    a. Upon information and belief, this Complaint is not based upon allegations or transactions that are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States is already a party. 31 U.S.C. §3730(e)(3).

    b. Upon further information and belief, there has been no "public disclosure" of key facts alleged herein regarding Relator's discovery and investigation of the fraud. Moreover, Relator is an "original source" of information as defined by 31 U.S.C. §3730(e)(4)(B) of the False Claims Act and provided detailed descriptions of the fraud committed by F3 before filing this action to the Commercial Targeting and Enforcement Office

of International Trade - U.S. Customs and Border Protection in 2014 and provided further information regarding F3 and Defendant Martin Home Furnishings to the U.S. Department of Justice in in June 2015.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a), because one or more of the Defendants can be found in and/or transact business within this District.

## III.

## THE FEDERAL FALSE CLAIMS ACT

8. The False Claims Act ("FCA"), which was originally enacted in 1863, was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153 to enhance the Government's ability to recover losses as a result of fraud. Among other things, the amendments created incentives for individuals with knowledge of fraud on the United States to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf. According to the Supreme Court, the FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. The FCA, as amended, includes a reverse false claims provision that imposes liability on a party that, by false statement, seeks to conceal, avoid, or decrease a precise, preexisting obligation to pay the United States. 31 U.S.C. § 3729(a)(1)(G).

9. The FCA provides that any person who knowingly makes, uses, or causes to be made or used false records and statements to decrease its obligations to the Government is liable for a civil penalty ranging from $5,500 up to $11,000 (as of the filing date of this Complaint) for each such violation, plus three times the amount of the damages sustained by the Federal Government.

## IV.

## THE APPLICATION OF THE FCA TO THE TARIFF ACT OF 1930

10. All goods imported into the United States are taxed according to the Harmonized Tariff Schedule of the United States ("HTS") (codified at 19 U.S.C. § 1202). The United States Customs and Border Protection division of the Department of Homeland Security ("CBP") is responsible for assessing and collecting these duties. CBP relies on importers to supply accurate information about imported merchandise, including the applicable HTS classification. The importer is required to declare under oath that, among other things, "all statements in the invoice or other documents filed with the entry, or in the entry itself, are true and correct." 19 U.S.C. § 1485(a)(3).

11. Under customs regulations, importers have an existing, non-contingent and nondiscretionary liability for customs duties. *See, e.g.,* 19 C.F.R. §§ 141.4, 159.2 (demanding entry and liquidation of imported merchandise); 19 U.S.C. § 1503 (assessment of duties on imports is generally based on the appraised value of the imported goods as determined on liquidation). Such liability arises immediately and automatically upon the importation of goods into the United States. 19 C.F.R. § 141.1(b)(1).[1]

12. Pursuant to 19 U.S.C. §1592, no person "may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States" by fraud, gross negligence, or negligence. Direct liability under 19 U.S.C. §1592 can extend to a person

---

[1] In addition to paying estimated duties, taxes, and fees when products enter the country, importers also are generally required to provide a bond to help ensure that the government can recover additional duties, taxes, or fees that may be owed. *See* 19 C.F.R. §§ 113.62 and 142.4 for CBP bonding requirements. In general, the importer is required to obtain a bond equal to 10 percent of the amount the importer paid in duties, taxes, and fees over the preceding year (or $50,000, whichever is greater).

4

negligently involved with introducing merchandise into commerce using a material and false misstatement even if that person is not the actual importer of record and does not have the requisite intent to be liable as an "aider or abetter."

13. False statements or records made to avoid or decrease this obligation to pay are actionable under the False Claims Act's reverse false claims provision. 31 U.S.C. §3729(a)(1)(G) (formerly 31 U.S.C. §3729(a)(7)).

14. The FCA allows any person having information about false or fraudulent claims to bring an action as a relator for itself and the Government, and to share in any recovery.[2] The FCA requires that the original *qui tam* complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time). Based on these provisions, Relator seeks through this action to recover on behalf of the United States all available damages, civil penalties, and other relief for the violations alleged herein.

15. Although the precise amount of the loss from Defendant's misconduct alleged in this action cannot presently be determined, Relator estimates that the damages, not including civil penalties, attorneys' fees and interest, that may be assessed against Defendant F3 is over $5 Million and that may be assessed against Martin Home Furnishings is over $4 Million under the facts alleged in this Complaint.

---

[2] The FCA was amended again 2010 in connection with enactment of health care reform laws. *See the Patient Protection and Affordable Care Act*, P.L. 111-148, Title X, Subtitle A, § 10104(j)(2), 124 Stat. 901 (Mar. 23, 2010). Among other changes, the "public disclosure bar" and "original source" provisions in Section 3730(e)(4) of the FCA were amended to broaden the ability of relators to bring *qui tam* lawsuits under the Act.

## V.
## FACTS

16. Relator has been a supplier of wooden bedroom furniture to the student housing industry for 25 years. It employs nearly two hundred American workers to manufacture and/or assemble its furniture at its factories in Indiana and Tennessee. When Relator does import certain wooden parts and other components from other countries, it strives to ensure that all applicable duties are paid. Relator and its American workers can compete head-to-head with any other company in the United States in this industry —as long as there is a level playing field and its competitors play by the rules.

17. Defendant F3 is based in Tennessee but provides furniture throughout the United States. Upon information and belief, unlike Relator, F3 does not have a factory in the United States and does not manufacture its own bedroom furniture. Rather, F3 imports ready-to-assemble bedroom from China and Malaysia.

18. Relator and F3 are direct competitors and both provide furniture for student housing projects.[3] Relator's supplier relationships, manufacturing techniques and its internal pricing models have been developed over many years and comprise the primary reasons why Relator is often the successful bidder on projects. In recent years, however, Relator has observed that F3 has been successfully underbidding Relator and other competitors.

19. Based on Relator's experience in the industry, its internal pricing models, and its familiarity with tactics used by some companies to illegally import furniture, University Loft began an investigation in 2014 into how F3 is able to underbid its competitors. One of the many variables that are taken into account by Relator's internal pricing models is the import duty that is imposed on various items of furniture. For example, wooden chests of drawers typically make

---

[3] Relator believes that other divisions of Defendant sell furniture in the retail market under the label "Curt Christian Designs."

up about 37% of the cost of equipping a student housing bedroom. Thus, a variation on the import duty paid on wooden chests of drawers significantly impacts the estimated cost and pricing calculations involved in a bid proposal. After reviewing numerous records regarding F3's imports and gathering information from its contacts in China about F3 and its suppliers. University Loft reached the conclusion that F3's costs for purchasing and importing the bedroom furniture from China were substantially below the costs predicted by University Loft's internal pricing models, because F3 has been illegally evading customs duties.

20. The United States has established laws to remedy the unfair trade practices of other countries and foreign companies that cause injury to domestic industries. For example, U.S. laws authorize the imposition of AD duties on imports that were "dumped" (i.e., sold at less than normal value) and CV duties on imports subsidized by foreign governments.

21. One such example of AD duties is the imposition of a high tariff rate on certain wooden bedroom furniture ("WBF") imported from the People's Republic of China. See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China, 70 FR 329 (January 4, 2005). The Anti-Dumping Order was renewed in 2010. See Case No. A-570-890 Wooden Bedroom Furniture From the People's Republic of China: Final Results of Expedited Sunset Review of Antidumping Duty Order ("ADD Case"). A copy of the Antidumping duty order entered in the ADD Case ("ADD Order") can be found at 75 Fed. Reg. 19364 *et seq.*

22. The ADD Order states, in relevant part:

> The product covered by the order is WBF. WBF is generally, but not exclusively, designed, manufactured, and offered for sale in coordinated groups, or bedrooms, in which all of the individual pieces are of approximately the same style and approximately the same material and/or finish. The subject merchandise is made substantially of wood products, including both solid wood and also engineered wood products made from wood particles, fibers, or other wooden materials such

as plywood, strand board, particle board, and fiberboard, with or without wood veneers, wood overlays, or laminates, with or without non-wood components or trim such as metal, marble, leather, glass, plastic, or other resins, and whether or not assembled, completed, or finished.

The subject merchandise **includes** the following items:

(1) **Wooden beds** such as loft beds, bunk beds, and other beds; (2) **wooden headboards** for beds (whether stand-alone or attached to side rails), wooden footboards for beds, wooden side rails for beds, and wooden canopies for beds; (3) **night tables, night stands, dressers**, commodes, bureaus, mule chests, gentlemen's chests, bachelor's chests, lingerie chests, wardrobes, vanities, chessers, chifforobes, and **wardrobe-type cabinets**; (4) dressers with framed glass mirrors that are attached to, incorporated in, sit on, or hang over the dresser; (5) chests-on-chests \1\, highboys \2\, lowboys \3\, **chests of drawers** \4\, chests \5\, door chests \6\, chiffoniers \7\, hutches \8\, and armoires \9\; (6) desks, computer stands, **filing cabinets,** book cases, or writing tables that are attached to or incorporated in the subject merchandise; and (7) other bedroom furniture consistent with the above list.... (emphasis added)

23.     The ADD Order specifically defines "chest-on-chests, highboys, lowboys, chest of drawers, chests, door chests, chiffoniers, hutches, and armoires." The definitions of a chest-on-chest, a highboy and a lowboy all include the phrase "chest of drawers." A "chest of drawers" is defined in the ADD order as a "case containing drawers for holding cloths." Thus, the common element in each of these definitions is that the article of furniture has drawers for holding or storing clothes.

24.     In summary, if a piece of furniture has drawers that are of the size typically used to hold or store clothes, the Department of Commerce (DOC) will determine that the item is within the scope of the ADD Order and is subject to antidumping duties.[4] Under the ADD Order, the antidumping duty cash deposit rate on WBF for Chinese exporters that have not been found to be entitled to a separate rate is currently 216.01%. On the other hand, the ADD Order

---

[4] The written description of the scope of the ADD order is dispositive, not the HTS classification. HTS classifications are listed in the scope of ADD orders for convenience only, and do not determine whether a product falls under the scope of an ADD order.

also specifically excludes certain items from the AD Duty. For example, certain types of office furniture, such as filing cabinets, are not subject to the AD Duty of 216.01%. Rather, this furniture is subject to a much lower duty.

25. In April 2014, Relator provided evidence to CPB that F3 was importing WBF from China, but mislabeling the furniture as "stackable files" to avoid detection. Relator continued its investigation and, in June 2015, supplemented this evidence, as well as provided evidence regarding importation of WBF by Defendant Martin Home Furnishings, in a disclosure to the Department of Justice.

26. In summary, beginning at least as early as 2009 and continuing into 2012, Defendant Martin Home Furnishings imported over 100 shipments of furniture from China under its own brand or the brand "Curt Christian Designs by Martin." In most instances, the furniture was generically described as "K.D." (knock down) Furniture but, upon information and belief, the K.D. Furniture included WBF and Defendant misrepresented the classification of the WBF or otherwise evaded the anti-dumping duties owed on the WBF.

27. Beginning at least as early as 2012, F3 has imported thousands of articles of WBF from China, but falsely classifying or describing the furniture. For example, F3 falsely described its line of Montego dressers/chests of drawers to CBP as "stackable files." F3 also has represented to CPB that some of its bedroom furniture was made from bamboo or metal, which are not subject to the ADD Order. In fact, F3's bedroom furniture, such as the "Montego Stackable File" referenced in the CPB letter, contains High Pressure Laminate (HPL), which is clearly within the ADD Order. Upon information and belief, F3 may be continuing this practice as evidenced by its

9

recent importation of "KD Furniture of Bed" from a Chinese supplier SOARING WING ENTERPRISES LIMITED on or about July 25, 2015.[5]

28.     In or around 2014, F3 began representing to CBP that it was also importing some of its furniture manufactured in Malaysia. Based on F3's past history and Relator's earlier investigation into evasion of Anti-Dumping duties by another company, Relator is concerned that Defendant may be evading Anti-Dumping duties by transshipping WBF from China through Malaysia and falsely designating the origin of the WBF as Malaysia rather than China.

29.     Based on the information presently known to University Loft, the estimated anti-dumping duties that Martin Home Furnishings should have paid from 2009 - 2012 regarding WBF is over $4 Million. These amounts does not include duties that Martin Home Furnishings may have illegally avoided prior to 2009 or after 2012.

30.     Based on the information presently known to University Loft, the estimated anti-dumping duties that F3 should have paid from 2012 through the present regarding WBF is over $5 Million. These amounts does not include duties that F3 may have illegally avoided by transshipping WBF made in China through Malaysia or duties regarding furniture shipped after June 2015.

### COUNT I
### Violation of the False Claims Act - 31 U.S.C. § 3729(a)(1)(G)

31.     The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

32.     By virtue of the acts described above, Defendants violated the reverse false claims provision of the FCA by evading applicable import duties on furniture, because they knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to

---

[5] Relator does not know at this time whether the beds in this recent shipment are purely metal (which would not be subject to the ADD Order) or should be classified as WBF under the ADD Order.

pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G) (formerly 31 U.S.C. § 3729(a)(7)).

33. By reason of Defendants' actions, the United States has been damaged, and continues to be damaged, in a substantial amount.

## COUNT II
### Conspiracy to Violate the False Claims Act - 31 U.S.C. § 3729(a)(1)(C)

34. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

35. Defendants acted in concert with other conspirators, including but not limited to overseas suppliers, to violate the False Claims Act by evading applicable import duties on furniture, because they knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

36. Defendants committed the overt acts described above in furtherance of the conspiracy, including but not limited to, falsely describing and classifying Chinese Wooden Bedroom Furniture or by otherwise illegally avoiding the obligation to pay antidumping duties. Defendants' conspiracy violates 31 U.S.C. § 3729(a)(1)(C), by which Defendants obtained entry and release of their WBF into the United States without paying amounts due to the United States.

37. By reason of Defendants' conspiracy, the United States has been damaged, and continues to be damaged, in a substantial amount.

### COUNT III
### Unfair Competition by F3

38. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

39. University Loft is a competitor of Defendant F3. By virtue of the acts described above, F3 has engaged in unfair competition under Texas law because it has engaged in a pattern of unlawful and/or unethical business conduct. These business practices are contrary to honest practice in commercial matters and have interfered with University Loft's ability to conduct its business.

### COUNT IV
### Tortious Interference with Prospective Business Relationships

40. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

41. Upon information and belief, Defendant F3 was able to underbid Relator or otherwise secure contracts to provide furniture in the student housing industry by engaging in the unlawful conduct described above. Based on Relator's past history of doing business in the student housing industry -- there was a reasonable probability that if Defendant F3 had not tortiously interfered by engaging in this unlawful activity, Plaintiff would have been awarded contracts that were, instead, awarded to F3.

42. Relator hereby demands a trial by jury

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States *ex rel.* University Loft Company respectfully requests that judgment be entered against Defendants, ordering that:

a. Defendants pay not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729 plus three times the amount of damages the United States has sustained because of Defendants' actions;

b. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

c. University Loft recover actual and exemplary damages on its state law claims against F3;

d. Relator be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d); and

e. The United States and Relator recover such other relief as the Court deems just and proper.

                                          Respectfully submitted,

                                          GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
                                          401 Congress Ave., Suite 2200, Austin, TX 78701
                                          P.O. Box 98, Austin TX 78767-0098
                                          (512) 480-5653 Telephone
                                          (512) 480-5853 Telecopy

By: _____
                                          Steven D. Smit
                                          State Bar No. 18527500
                                          ssmit@gdhm.com

                                          ATTORNEYS FOR RELATOR UNIVERSITY LOFT COMPANY